**Case No. 17-4125**

# United States Court Of Appeals
**FOR THE SIXTH CIRCUIT**

WALID JAMMAL, et al.,
*Plaintiffs-Appellees,*

v.

AMERICAN FAMILY INSURANCE COMPANY, et al.,
*Defendants-Appellants.*

On Appeal from the United States District Court for the Northern District of Ohio, No. 1:13-cv-00437-DCN

**BRIEF OF AMICI CURIAE AARP AND AARP FOUNDATION IN SUPPORT OF PLAINTIFFS-APPELLEES URGING AFFIRMANCE**

Mary Ellen Signorille*
msignorille@aarp.org
William Alvarado Rivera
AARP Foundation Litigation
601 E Street, NW
Washington, DC 20049
(202) 434-2060
* *Counsel of Record*

Counsel for Amici Curiae

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**Disclosure of Corporate Affiliations and Financial Interest**

Sixth Circuit
Case Number: 17-4125

Case Name: Walid Jammal, et al. v. American Family Insurance Company, et al.

Name of Counsel: Mary Ellen Signorille

Pursuant to 6th Cir. R. 26.1, AARP makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party: *No.*

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest: *No.*

CERTIFICATE OF SERVICE

I certify that on March 16, 2018 the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

s/ Mary Ellen Signorille
Mary Ellen Signorille

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**Disclosure of Corporate Affiliations and Financial Interest**

Sixth Circuit
Case Number: 17-4125

Case Name: Walid Jammal, et al. v. American Family Insurance Company, et al.

Name of Counsel: Mary Ellen Signorille

Pursuant to 6th Cir. R. 26.1, AARP Foundation makes the following disclosure:

3. Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party: *No.*

4. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest: *No.*

CERTIFICATE OF SERVICE

I certify that on March 16, 2018 the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

s/ Mary Ellen Signorille
Mary Ellen Signorille

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENTS .................................... i, ii

TABLE OF AUTHORITIES ............................................................... v

INTERESTS OF AMICI CURIAE .......................................................... 1

SUMMARY OF ARGUMENT ................................................................ 3

ARGUMENT ........................................................................................ 3

APPELLANTS AND THEIR AMICI PLACE UNDUE WEIGHT ON THE FACE OF THE CONTRACT, IGNORING CONTROLLING PRECEDENT AND SEEKING TO SHIRK LONG-ESTABLISHED LEGAL DUTIES. ............................................. 3

A. Whether Independent Contracting Is Beneficial Or Not Is Irrelevant To This Case. ......................................... 3

B. Because The Courts, Employers, And Workers Understand And Know How To Apply The Longstanding *Darden* Factors, There Is No Reason To Elevate One Factor Over Another. ........................ 8

C. Appellants And Their Amici Place Undue Weight On The Self-Serving Classification Labels In The Contract, To The Exclusion Of Other Factors And The Facts. ................................................................ 10

1. Courts in this circuit routinely conduct fact-intensive inquiries analogous to those that *Darden* requires. ........................................................ 12

2. Courts must apply all of the *Darden* factors to determine the status of workers. ................................ 15

CONCLUSION ..................................................................................... 18

CERTIFICATE OF COMPLIANCE........................................................19

CERTIFICATE OF SERVICE...........................................................20

# TABLE OF AUTHORITIES

## Cases

*Am. Cas. v. FDIC*,
39 F.3d 633 (6th Cir. 1994). ........................................................ 13

*Am. Council of Life Insurers v. Ross*,
558 F.3d 600 (6th Cir. 2009) ........................................................ 1

*CIGNA Corp. v. Amara*,
563 U.S. 421 (2011) ........................................................ 1

*Donovan v. Brandel*,
736 F.2d 1114 (6th Cir. 1984) ........................................................ 17

*Flynn v. Greg Anthony Constr.*,
95 F. App'x 726 (6th Cir. 2003). ........................................................ 13

*Hall v. Consol. Freightways*,
337 F.3d 669 (6th Cir. 2003). ........................................................ 11, 12

*In re Celeryvale Transp.*,
44 B.R. 1007 (Bankr. E.D. Tenn. 1984) ........................................................ 14

*In re Senior Hous. Alts.*,
444 B.R. 386 (Bankr. E.D. Tenn. 2011). ........................................................ 14

*Jammal v. Am. Family Ins. Grp.*,
No. 1:13-CV-437, 2017 U.S. Dist. LEXIS 120684
(N.D. Ohio July 31, 2017)........................................................ 9

*LaRue v. DeWolff, Boberg & Assocs.*,
552 U.S. 248 (2008) ........................................................ 1

*Nat'l Labor Relations Bd. v. United Ins. Co. of Am.*,
390 U.S. 254 (1968). ........................................................ 9

*Nationwide Mut. Ins. Co. v. Darden*,
503 U.S. 318 (1992). ............................................ 2, 3, 8, 9, 11, 18

*N.H. Ins. v. Home S&L*,
581 F.3d 420 (6th Cir. 2009) ........................................................14

*S. Bertram Inc. v. Citizens Ins. Co. of Am.*,
657 F. App'x 477 (6th Cir. 2016) ..................................................15

*Shaw v. Delta Airlines, Inc.*
463 U.S. 85 (1983). .............................................................................8

*Sorah v. Sorah (In re Sorah)*,
163 F.3d 397 (6th Cir. 1998) ..............................................13, 15

*Toussaint v. Blue Cross & Blue Shield*,
292 N.W.2d 880 (Mich. 1980)........................................................16

*Ware v. United States*,
67 F.3d 574 (6th Cir. 1995) ...........................................................11

*Weary v. Cochran*,
377 F.3d 522 (6th Cir. 2004) .........................................................11

*Weeks v. Mich. Dep't of Cmty. Health*,
587 F. App'x 850 (6th Cir. 2014). ...................................................13

**Statutes and Regulations**

Employee Retirement Income Security Act of 1974 (ERISA).
29 U.S.C. § 1001 .................................................................................2

ERISA § 2(b), 29 U.S.C. § 1001(b).........................................................8

ERISA § 3(6), 29 U.S.C. § 1002(6).........................................................8

ERISA § 3(8), 29 U.S.C. § 1002(8).........................................................8

Rev. Proc. 2008-50, § 5.01(2)(a),(b), 2008-35 I.R.B. 464 (Aug. 14, 2008) ........ 15

U.C.C. § 1-201(37) (2014) ........ 14

**Other Authorities**

Brief for American Council of Life Insurers as Amici Curiae Supporting Appellants, *Jammal v. Am. Family Ins., Co.*, No. 17-4125 (6th Cir. filed Oct. 26, 2017) ........ 10, 11

Brief for Defendants-Appellants, *Jammal v. Am. Family Ins., Co.*, No. 17-4125 (6th Cir. filed Oct. 26, 2017) ........ 10, 15, 16

Brief for the U.S. Chamber of Commerce as Amici Curiae Supporting Appellants, *Jammal v. Am. Family Ins., Co.*, No. 17-4125 (6th Cir. filed Oct. 26, 2017) ........ 4, 7, 10, 17

*Exploring the "Gig Economy" and the Future of Retirement Savings*: *Hearing Before the Subcomm. on Primary Health and Retirement Security of the S. Comm. on Health, Education, Labor & Pensions*, 115th Cong., 2d Sess. (2018) (statement of Monique Morrissey, Economist, Economic Policy Institute), goo.gl/ZnspK2 ........ 5, 6

Jon Hyman, *The 12 Myths About Independent Contractor Misclassification*, The Practical Employer (Dec. 21, 2016), goo.gl/honn7N. ........ 7

Kathryn J. Kennedy & Paul T. Schultz, III, *Employee Benefits Law: Qualification and ERISA Requirements* (2d ed. 2012). ........ 15

National Employment Law Project, *Independent Contractor Misclassification Imposes Huge Costs on Workers and Federal and State Treasuries* (2015), goo.gl/TpdUh4. ........ 6

Jeffrey Pfeffer, *The case against the 'gig economy,'* Fortune (July 30, 2015), goo.gl/WeZs2W. .................................................. 5, 6

U.S. Dep't of Labor News Release 15-0518-NAT (Apr. 23, 2015), goo.gl/zzCrzW. .......................................................................... 7

David Weil, *Lots of Employees Get Misclassified as Contractors. Here's Why It Matters*, Harv. Bus. Rev. (July 5, 2017), goo.gl/5Y1vBv. ..................................................... 5, 6

## INTERESTS OF AMICI CURIAE[1]

AARP is the nation's largest nonprofit, nonpartisan organization dedicated to empowering Americans 50 and older to choose how they live as they age. With nearly 38 million members and offices in every state, the District of Columbia, Puerto Rico, and the U.S. Virgin Islands, AARP works to strengthen communities and advocate for what matters most to families, with a focus on health security, financial stability, and personal fulfillment. AARP's charitable affiliate, AARP Foundation, works to ensure that low-income older adults have nutritious food, affordable housing, a steady income, and strong and sustaining bonds.

AARP and AARP Foundation, through participation as amici curiae in state and federal courts,[2] seek to protect older Americans' pension, health, and other benefit rights guaranteed under the

---

[1] Amici certify that no party or party's counsel authored this brief in whole or in part, or contributed money that was intended to fund the brief's preparation or submission, and further certifies that no person, other than amici, contributed money intended to prepare or submit this brief. FED. R. APP. P. 29(c)(5). Counsel for both parties have consented to the filing of this brief.

[2] *E.g.*, *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011); *LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248 (2008); *Am. Council of Life Insurers v. Ross*, 558 F.3d 600 (6th Cir. 2009).

Employee Retirement Income Security Act of 1974 (ERISA). 29 U.S.C. § 1001. This case presents the fundamental issue of whether companies can escape their responsibilities under ERISA by classifying workers as independent contractors when they are, in fact, employees. Companies should not be permitted to reap the benefits of imposing control over workers similar to that imposed upon their recognized employees, while denying these workers the benefits of being classified as employees.

Accordingly, AARP and AARP Foundation submit this brief to support the Sixth Circuit's application of the factors in *Nationwide Mutual Insurance Company v. Darden*, 503 U.S. 318, 323-24 (1992), which the district court correctly applied in finding that the American Family Insurance agents were employees. Resolution of the issues in this case will have a significant impact on workers' abilities to participate in a company's benefit plan, and hence their retirement security. In light of the significance of the issues this case presents, AARP and AARP Foundation respectfully submit this brief amici curiae to facilitate the Court's full consideration of these issues.

## SUMMARY OF ARGUMENT

Whether independent contracting is beneficial or not is irrelevant to this case. Instead, it is imperative for a court to apply all of the factors set forth in *Nationwide Mutual Insurance Company v. Darden*, 503 U.S. 318 (1992), without elevating any one factor over another. Companies should not be permitted to circumvent the courts' examination of workers' proper classification merely by requiring workers to sign a contract with a provision declaring that they are independent contractors. If courts permit this, some companies will inevitably deny workers the benefits and protections to which the law would entitle them if properly classified as employees rather than independent contractors.

## ARGUMENT

### APPELLANTS AND THEIR AMICI PLACE UNDUE WEIGHT ON THE FACE OF THE CONTRACT, IGNORING CONTROLLING PRECEDENT AND SEEKING TO SHIRK LONG-ESTABLISHED LEGAL DUTIES.

#### A. Whether Independent Contracting Is Beneficial Or Not Is Irrelevant To This Case.

To be clear, AARP and AARP Foundation are not taking a position as to whether independent contractor or employee status is a superior

business model in the abstract. However, we do maintain that under ERISA the company cannot have it both ways—functionally treating workers as employees and yet denying these same workers their corresponding benefits. The U.S. Chamber of Commerce paints a rosy picture concerning the advantages of independent contracting. Brief for the U.S. Chamber of Commerce as Amici Curiae Supporting Appellants at 4-7, *Jammal v. Am. Family Ins., Co.*, No. 17-4125 (6th Cir. filed Oct. 26, 2017). In this case, the company imposes only the disadvantages of independent contracting, including the loss of benefits and other economic costs, while granting few of the freedoms. The Chamber not only ignores the fact that employers commonly use the independent contractor status as a means of avoiding benefit obligations and the cost of providing benefits, but also ignores the resultant harm the denial of benefits causes to the economic security of those workers, who are, in reality, employees.

The importance of proper classification of workers cannot be overstated. Independent contractors generally have access to far fewer

benefits and legal protections than employees.[3] Employees are entitled to such legal protections as a minimum wage, paid overtime, and certain benefits, such as splitting the cost of Social Security and Medicare payroll taxes with the employer, and having income taxes withheld from their paychecks.[4] Employees may also have access to benefits such as health insurance, workplace retirement plans, sick and vacation leave, and other benefits that many employers offer only to employees.[5]

In contrast, independent contractors have none of these rights or benefits. They must manage their own income tax withholding (through quarterly estimated payments), pay both the employer and employee shares of Social Security and Medicare taxes, and provide for their own health insurance and retirement savings.[6] Indeed, improper

---

[3] David Weil, *Lots of Employees Get Misclassified as Contractors. Here's Why It Matters*, Harv. Bus. Rev. (July 5, 2017), goo.gl/5Y1vBv.

[4] *Id.*

[5] Jeffrey Pfeffer, *The case against the 'gig economy,'* Fortune (July 30, 2015), goo.gl/WeZs2W.

[6] *Exploring the "Gig Economy" and the Future of Retirement Savings*: *Hearing Before the Subcomm. on Primary Health and Retirement Security of the S. Comm. on Health, Education, Labor & Pensions*, 115th Cong., 2d Sess. (2018) [hereinafter *Hearing*] (statement of

classification has contributed to lower job quality in some industries and led to a decrease in worker financial resilience.[7] Moreover, it puts employers who play by the rules at a competitive disadvantage.[8] Finally, improper classification can lead to decreased funding for state and federal social insurance programs.[9]

Certainly, some workers prefer the flexibility that independent contractor status provides and will initially choose to work in that capacity.[10] However, deferring to the labeling of the relationship in the contract—without an analysis of all of the *Darden* factors—empowers companies to subsequently impose new restrictions on these workers, without any consequence. These new restrictions may warrant reclassification of these workers as employees, requiring the provision of employee benefits.

---

Monique Morrissey, Economist, Economic Policy Institute), goo.gl/ZnspK2; Weil, *supra* note 3; Pfeffer, *supra* note 5.

[7] Pfeffer, *supra* note 5.

[8] Weil, *supra* note 3.

[9] National Employment Law Project, *Independent Contractor Misclassification Imposes Huge Costs on Workers and Federal and State Treasuries* (2015), goo.gl/TpdUh4.

[10] *Hearing*, *supra* note 6 (statement of Monique Morrissey, Economist, Economic Policy Institute).

While the Chamber touts the opportunity of workers to choose to work as independent contractors, Brief for the U.S. Chamber of Commerce as Amici Curiae Supporting Appellants at 5, *Jammal*, No. 17-4125, it ignores situations where workers initially choose employee status, only to have their employers reclassify them against their will. In one instance, one thousand workers went home at the end of the week as employees returning on the following Monday to find their employer had converted them to "member/owners" of hundreds of limited liability companies, effectively stripping them of federal and state job protections. U.S. Dep't of Labor News Release 15-0518-NAT (Apr. 23, 2015), goo.gl/zzCrzW. Even if employers properly classified workers as independent contractors at some point, that classification can change if the relationship between the parties changes. Jon Hyman, *The 12 Myths About Independent Contractor Misclassification*, The Practical Employer (Dec. 21, 2016), goo.gl/honn7N. This makes it even more important that the courts analyze the actual relationship between the worker and the company to determine employee status, regardless of the advantages or disadvantages of independent contractor classification.

### B. Because The Courts, Employers, And Workers Understand And Know How To Apply The Longstanding *Darden* Factors, There Is No Reason To Elevate One Factor Over Another.

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Airlines, Inc*. 463 U.S. 85, 90 (1983). ERISA's underlying policy is to protect the interests of employees in employee benefit plans by "establishing standards of conduct, responsibility, and obligation for fiduciaries" and "by providing for appropriate remedies [and] sanctions" for violations of these fiduciary standards. ERISA § 2(b), 29 U.S.C. § 1001(b). If a worker is not an employee, then the plan cannot cover her.[11] Thus, a worker must be an employee in order to obtain the protections of ERISA.

The Supreme Court in *Darden* clarified the definition of employee under ERISA. ERISA's statutory definition of "employee" is "any individual employed by an employer." ERISA § 3(6), 29 U.S.C. § 1002(6). As the Supreme Court noted, the definition "is completely circular and explains nothing." *Nationwide Mut. Ins. Co. v. Darden*, 503

[11] Although not pertinent to this case, a person could be covered under a plan as a beneficiary; generally, beneficiaries are spouses or dependent children of an employee. ERISA § 3(8), 29 U.S.C. § 1002(8).

U.S. 318, 323 (1992). In *Darden*, the Supreme Court held that, in deciding "who qualifies as an 'employee' under ERISA," the term "employee" was used in the traditional common law agency sense. *Id.* at 319, 323.

*Darden* sets forth various non-exhaustive and non-exclusive factors for determining whether an individual is an employee, the first factor being "the hiring party's right to control the manner and means by which the product is accomplished." *Id.* at 323. The Supreme Court further stated that "[s]ince the common-law test contains 'no shorthand formula or magic phrase that can be applied to find the answer, . . . all of the incidents of the relationship must be assessed and weighed with no one factor being decisive.'" *Id.* at 324 (quoting *Nat'l Labor Relations Bd. v. United Ins. Co. of Am.*, 390 U.S. 254, 258 (1968)).

In this case, the court, after a full trial, weighed all of the factors to reach its finding that American Family agents were employees. *Jammal v. Am. Family Ins. Grp.*, No. 1:13-CV-437, 2017 U.S. Dist. LEXIS 120684, *63-64 (N.D. Ohio July 31, 2017). Despite the protestations of American Family and its amici, this decision does not mean that every insurance agent is an employee or, conversely, that no

insurance agent is an independent contractor. It does mean that a court must weigh the *Darden* factors to determine on what side of the employee/independent contractor line a particular employer's workers fall during a specific time period.

*Darden* has worked well for over 25 years. The courts, employers, and workers understand the factors and are experienced in applying them. There is no reason to change the factors or to elevate one factor over another.

### C. Appellants And Their Amici Place Undue Weight On The Self-Serving Classification Labels In The Contract, To The Exclusion Of Other Factors And The Facts.

The American Family defendants and their amici repeatedly emphasize the fact that the contract designated class members as independent contractors and that the contract requires the relationship to be structured in accordance with that designation. *See* Brief for Defendants-Appellants at 19-20, *Jammal v. Am. Family Ins., Co.*, No. 17-4125 (6th Cir. filed Oct. 26, 2017); Brief for the U.S. Chamber of Commerce as Amici Curiae Supporting Appellants at 8, 10, *Jammal*, No. 17-4125; Brief for American Council of Life Insurers as Amici Curiae Supporting Appellants at 5-6, *Jammal v. Am. Family Ins., Co.*,

No. 17-4125 (6th Cir. filed Oct. 26, 2017). However, Supreme Court and Sixth Circuit precedent consistently clarify that formal designations do not end court inquiries on this subject, nor do the words of the contract control when the employer has deviated from the original agreement. For fact-intensive questions like the one at issue here, "all of the incidents of the relationship must be assessed." *Darden*, 503 U.S. at 324; *see also Weary v. Cochran*, 377 F.3d 522, 525 (6th Cir. 2004) (noting when analyzing and categorizing employment relationships, "no one factor [is] decisive" (quoting *Darden*, 503 U.S. at 324)); *Ware v. United States*, 67 F.3d 574, 576-77 (6th Cir. 1995) (same).

Indeed, this court has noted that failure to look behind the face or the form of a policy or agreement can provide employers "an incentive to adopt formal policies" but "no incentive to enforce those policies." *Hall v. Consol. Freightways*, 337 F.3d 669, 675 (6th Cir. 2003). Such a ruling would motivate most employers to insist that their workers sign a contract with a provision stating that they are independent contractors and then to treat those workers exactly like employees; from the viewpoint of a business model, the employers would be fools not to. The employers would have the advantage of having their workforce exactly

as needed, but at a significantly lower cost and level of responsibility. Ruling for American Family would, as observed in *Hall*, provide great incentive to make independent contractor agreements, but no incentive to implement those agreements as written.

### 1. Courts in this circuit routinely conduct fact-intensive inquiries analogous to those that *Darden* requires.

Sixth Circuit courts frequently look beyond formal designations or the words of a contract or policy where the actual facts belie those words and designations. *See, e.g.*, *Hall*, 337 F.3d at 675 ("for any employer to show that it engaged in good faith efforts so as to avoid liability for punitive damages, it is not enough that the employer have a written or formal anti-discrimination policy . . . the employer must demonstrate that it engaged in good faith efforts to *implement* the policy.") (emphasis in original). The employer in *Hall* may well have intended to implement its anti-discrimination policy when it was first created; however, as in the case at bar, the court was called on to seek evidence of implementation consonant with that intent. It was not enough simply to point to the document or its formal designation as an anti-discrimination policy.

Courts in this circuit have employed just this sort of substantive analysis in many areas of law. For example, the Sixth Circuit has counseled bankruptcy courts that they must determine whether a debtor's obligation to a spouse arising from a divorce decree—regardless of the label applied in the decree—"is actually support," rendering the obligation not dischargeable. *Sorah v. Sorah (In re Sorah)*, 163 F.3d 397, 401 (6th Cir. 1998). Further, courts have noted that, even where a defendant produces a formal, non-discriminatory hiring policy, such a policy is insufficient standing alone to preclude finding that it is merely a pretext for discrimination. *Weeks v. Mich. Dep't of Cmty. Health*, 587 F. App'x 850, 857 (6th Cir. 2014). Courts have pierced the corporate veil where the corporate form functions merely as the alter ego of the owner, mandating liability for obligations as an employer under ERISA. *Flynn v. Greg Anthony Constr.*, 95 F. App'x 726, 733-39 (6th Cir. 2003). In addition, courts have looked beyond the label placed on a shareholder derivative suit to verify whether it was, in fact, brought "on behalf of" the FDIC. *Am. Cas. v. FDIC*, 39 F.3d 633, 636 (6th Cir. 1994). Finally, courts have asked, pleadings aside, whether an insurance policy is

indeed a "maritime contract" "[s]imply because [it] relates to boats and a marina." *N.H. Ins. v. Home S&L*, 581 F.3d 420, 424 (6th Cir. 2009).

Courts in this circuit do not consider their obligations discharged by reference to self-serving labels or the words of a policy or agreement, seeking instead to give "effect to the realities of the underlying transaction despite the form placed on it by the parties." *In re Senior Hous. Alts.*, 444 B.R. 386, 396 (Bankr. E.D. Tenn. 2011). The Uniform Commercial Code has for decades required looking beyond labels and the words of the agreement.

> The effect of a lease cannot be determined by considering only the terms of the lease. The lease will not reveal the outside facts regarding the leased goods, the lessor, and the lessee that indicate whether or not the lease is really a secured sale. The parties may not intend to enforce or abide by all the provisions of the lease and may have unwritten agreements concerning the leased goods or the meaning of the lease. Thus, the court cannot be restricted to the terms of the lease in determining whether or not it is intended for security.

*In re Celeryvale Transp.*, 44 B.R. 1007, 1012-13 (Bankr. E.D. Tenn. 1984) (discussing former section 201(37) of Article 1 of the U.C.C., which provided that "[w]hether a lease is intended as security is to be determined by the facts of each case"), *aff'd*, 822 F.3d 16 (6th Cir. 1987). In short, as this court recently stated, "if something looks like a duck,

walks like a duck, and quacks like a duck, then [labels notwithstanding] it is probably a duck." *S. Bertram Inc. v. Citizens Ins. Co. of Am.*, 657 F. App'x 477, 478 (6th Cir. 2016) (quoting *Sorah*, 163 F.3d at 401) (internal quotation marks omitted).

Moreover, this is consistent with the view of the Internal Revenue Service concerning problems with employee benefit plans. The Internal Revenue Service recognizes two categories of plan qualification failures: plan document failures, meaning the failure of the plan to contain required qualification provisions, and operational failures, which occur because the plan operated in a manner inconsistent with its terms. *See* Rev. Proc. 2008-50, § 5.01(2)(a),(b), 2008-35 I.R.B. 464 (Aug. 14, 2008); *see generally* Kathryn J. Kennedy & Paul T. Schultz, III, *Employee Benefits Law: Qualification and ERISA Requirements* § 15.02 (2d ed. 2012). Here, similar to a benefits plan operational failure, there may have been a contract (like a plan document), but the parties did not conduct their relationship in accordance with the contract's terms.

**2. Courts must apply all of the *Darden* factors to determine the status of workers.**

Contrary to American Family's argument, courts should not "hesitate to interfere," Brief for Defendants-Appellants at 20, *Jammal,*

No. 17-4125, where an employer seeks the advantage of controlling its workers as employees while shirking the concomitant responsibilities attending that status. Employers cannot preclude inquiry into the facts of the employment relationship by simply pointing to the nature of the original agreement. For example, consider *Toussaint*, in which an employer, in response to an inquiry about job security at the time of hire, directs an employee to the company's employment manual stating that employees could be terminated only for just cause. That employer, after firing the employee, was not allowed to argue that the original signed employment agreement controlled termination procedures to the exclusion of all other evidence or conduct, even if there is an initial legal presumption that employment agreements are at-will. Instead, the court found that the procedures for termination are controlled by the employee's legitimate expectations informed by not only the original agreement but the totality of the circumstances, including subsequent information. *Toussaint v. Blue Cross & Blue Shield*, 292 N.W.2d 880, 884, 892 (Mich. 1980). American Family has the situation backwards when it suggests that holding the company responsible for deviating from the agreement is the result that would upset well-settled

expectations. While these cases might very well become more predictable if only the words of the original agreement controlled the analysis, such predictability would come at the cost of ignoring federal law and decades of consistent Supreme Court and Sixth Circuit precedent.

There is no basis for the suggestion of Appellants and their amici that conducting *Darden*'s fact-intensive inquiry in this case will somehow preclude future parties from establishing independent contractor relationships. *Cf. Donovan v. Brandel*, 736 F.2d 1114, 1120 (6th Cir. 1984) (every claim to determine whether a worker is an employee must be evaluated on the unique and comprehensive factual record presented). Amicus Chamber of Commerce is partly right when asserting that "[i]f businesses and workers are to secure the benefits of independent contracting when it suits their needs, they must be able to predict with confidence that a court will respect their choice later on." Brief for the U.S. Chamber of Commerce as Amici Curiae Supporting Appellants at 8, *Jammal*, No. 17-4125. However, respect for that choice becomes a farce if, in the name of such "respect," courts ignore the relationship that in fact develops, especially when that entails ignoring

controlling precedent. *See Darden*, 503 U.S. at 324 ("all of the incidents of the relationship must be assessed."). Those agreeing to be independent contractors whose employers then treat them as employees should have every expectation of the benefits that attend the latter status. Little could be more upsetting to the workers' expectations than seeing courts elevate form over substance in deciding whether those workers enjoy the benefits of being employees.

## CONCLUSION

For the foregoing reasons, the court should affirm the district court's decision.

Dated: March 16, 2018

Respectfully submitted,

/s/ Mary Ellen Signorille
Mary Ellen Signorille*
msignorille@aarp.org
William Alvarado Rivera
AARP Foundation Litigation
601 E Street, NW
Washington, DC 20049
(202) 434-2060
**Counsel of Record*
Counsel for Amici Curiae

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 29(d) and 32(a)(7) because the brief contains 3,448 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14 point Century Schoolbook font.

Dated: March 16, 2018

/s/ Mary Ellen Signorille
Mary Ellen Signorille
Counsel for Amici Curiae

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2018, I filed the foregoing Brief of Amici Curiae AARP and AARP Foundation in Support of Plaintiffs-Appellees with the Clerk of the United States Court of Appeals for the Sixth Circuit via the CM/ECF system, which will send notice of such filings to all registered CM/ECF users.

Dated: March 16, 2018

/s/ Mary Ellen Signorille
Mary Ellen Signorille